UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-5752 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| U.S. CONCRETE, INC., MICHAEL D. | : **SECTIONS 14(a) AND 20(a) OF THE** |
| LUNDIN, SUSAN M. BALL, KURT M. | : **SECURITIES EXCHANGE ACT OF** |
| CELLAR, RAJAN C. PENKAR, RONNIE | : **1934** |
| PRUITT, THEODORE P. ROSSI, COLIN M. | : |
| SUTHERLAND, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against U.S. Concrete, Inc. ("U.S. Concrete or the "Company") and the members U.S. Concrete board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of U.S. Concrete by Vulcan Materials Company ("Vulcan") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on July 1, 2021 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Grizzly Merger Sub I, Inc. ("Merger Sub"), a wholly owned subsidiary of Vulcan, will merge with and into U.S. Concrete with U.S. Concrete surviving the merger and becoming a wholly owned subsidiary of Vulcan (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each U.S. Concrete common share issued and outstanding will be converted into the right to receive $74.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked U.S. Concrete stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Evercore Group L.L.C. ("Evercore") and BNP Paribas Securities Corp. ("BNP") in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to U.S. Concrete stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the proxy solicitor for U.S. Concrete is headquartered in this District and the closing of the Proposed Transaction will take place in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of U.S. Concrete common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Michael D. Lundin has served as a member of the Board since 2010 and is the Chairman of the Board.

11. Individual Defendant Susan M. Ball has served as a member of the Board since 2018.

12. Individual Defendant Kurt M. Cellar has served as a member of the Board since 2010.

13. Individual Defendant Rajan C. Penkar has served as a member of the Board since 2020.

14. Individual Defendant Ronnie Pruitt has served as a member of the Board since 2020 and is the Company's President and Chief Executive Officer.

15. Individual Defendant Theodore P. Rossi has served as a member of the Board since 2011.

16. Individual Defendant Colin M. Sutherland has served as a member of the Board since 2010.

17. Defendant U.S. Concrete is incorporated in Delaware and maintains its principal offices at 331 N. Main Street, Euless, Texas 76039. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "USCR."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

20. U.S. Concrete, through its subsidiaries, produces and sells ready-mixed concrete, aggregates, and concrete-related products and services to the construction industry in the United States, the U.S. Virgin Islands, and Canada. It operates through two segments, Ready-Mixed Concrete and Aggregate Products. The Ready-Mixed Concrete segment engages in the formulation, production, and delivery of ready-mixed concrete to customers' job sites. The Aggregate Products segment offers crushed stone, sand, and gravel for use in commercial, industrial, and public works projects. The Company's other products include building materials

stores, hauling operations, aggregates distribution terminals, a recycled aggregates operation and concrete blocks, as well as products, including ARIDUS Rapid Drying Concrete technology and the Where's My Concrete? family of web and mobile applications. It primarily serves concrete general contractors, developers, governmental agencies, and home builders. The Company was incorporated in 1997 and is headquartered in Euless, Texas.

21. On June 7, 2021, U.S. Concrete and Vulcan jointly announced that they had entered into a proposed transaction:

> BIRMINGHAM, Ala. and EULESS, Texas, June 7, 2021 /PRNewswire/ -- Vulcan Materials Company (NYSE: VMC), a leading producer of construction aggregates, and U.S. Concrete, Inc. (NASDAQ: USCR), a leading supplier of aggregates and ready-mixed concrete, today announced that they have entered into a definitive merger agreement. Under the terms of the agreement, Vulcan will acquire all of the issued and outstanding shares of U.S. Concrete common stock for a purchase price of $74.00 per share in cash, which represents a total equity value of $1.294 billion. The transaction has been unanimously approved by the boards of directors of both companies and is expected to close in the second half of 2021, subject to U.S. Concrete shareholder approval, regulatory clearance, and other customary closing conditions.
>
> Headquartered in Euless, Texas, U.S. Concrete operates in large, attractive metropolitan areas that complement Vulcan's existing footprint. With 27 aggregates operations serving California, Texas and the Northeast, that shipped 12.6 million tons in 2020, the acquisition of U.S. Concrete's portfolio represents a natural addition to Vulcan's business. The transaction also provides strategically oriented ready-mixed concrete operations that will expand Vulcan's service capabilities. Other highlights include:
>
> - Complements Vulcan's existing aggregates business in California with access to blue-water source of high quality aggregates reserves;
> - Enhances Vulcan's position in key Texas growth areas;
> - Expands Vulcan's aggregates footprint, including in the attractive New York and New Jersey metropolitan areas;

- Expected to increase Vulcan's EBITDA by approximately $190 million before synergies; and,
- Expected to be accretive to Vulcan's earnings per share in the first full year following closing.

Tom Hill, Chairman and CEO of Vulcan Materials Company, said, "U.S. Concrete is an important Vulcan customer in a number of key areas, and this transaction is a logical and exciting step in our growth strategy as we further bolster our geographic footprint. Ronnie Pruitt and his team have done an excellent job growing and operating its business, and we look forward to welcoming the U.S. Concrete employees to the Vulcan family. This is a merger of two corporate cultures that value people, technology, operating disciplines, customer service and the entrepreneurial spirit, and it positions Vulcan to further drive sustainable, long-term shareholder value."

Ronnie Pruitt, President and CEO of U.S. Concrete added, "Today's announcement that we are combining with Vulcan, a leading producer of construction aggregates, marks a major milestone in U.S. Concrete's history. We are proud of the work our team has accomplished over the past few years to achieve operational excellence and serve our customers and believe combining with Vulcan will provide us with the opportunity to build on our progress. Our combined organization will share an extensive and successful track record of acquisitions and greenfield development, and we look forward to working with Tom and the entire Vulcan family to close this transaction and integrate our two strong businesses."

The Greystone Group is serving as financial advisor to Vulcan. Truist Securities, Inc. is serving as sole lead arranger on committed financing to Vulcan. Wachtell, Lipton, Rosen & Katz and Bradley Arant Boult Cummings LLP are serving as legal counsel to Vulcan. Evercore and BNP Paribas Securities Corp. are serving as financial advisors to U.S. Concrete. Gibson, Dunn & Crutcher, LLP and Akin Gump Strauss Hauer & Feld LLP are serving as legal counsel to U.S. Concrete.

\* \* \*

22. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that U.S. Concrete's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23.     On July 1. 2021, U.S. Concrete filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning U.S. Concrete Financial Projections*

24.     The Proxy Statement fails to provide material information concerning financial projections by U.S. Concrete management and relied upon by the financial advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that U.S. Concrete management provided to the Board and the financial advisors. Courts have uniformly

7

stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow as calculated by Evercore and BNP Paribas, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Evercore's Financial Analysis*

29. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Evercore in the analysis.

30. With respect to Evercore's *Selected Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Evercore in the analysis, including the value of each transaction or implied enterprise value, and the closing dates of each transaction.

31. With respect to Evercore's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.25% to 3.25%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.0% to 10.0%, (iv) the net debt of the Company and non-controlling interest as of March 31, 2021; and (v) the number of fully diluted shares of Company common stock outstanding.

32. With respect to Evercore's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

of EV/NTM Adjusted EBITDA multiple range of 7.0x to 8.5x; (ii) the Company's estimated net debt and non-controlling interest as of the end of calendar year 2024; (iii) the number of estimated fully diluted shares of Company common stock outstanding; (iv) the inputs and assumptions underlying the use of the illustrative discount rate of 13.0%; (v) the Company's cost of equity.

33. With respect to Evercore's *Illustrative Sponsor Ability to Pay Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use of a required internal rate of return in the range of 17.5% to 22.5%; (ii) the inputs and assumptions underlying the use of a total leverage ratio of 5.5x to the Company's estimated LTM Adjusted EBITDA as of March 31, 2021; (iii) the basis for applying exit multiples in the range of 7.5x to 9.0x to the Company's estimated 2025 LTM Adjusted EBITDA.

34. With respect to Evercore's *Equity Research Analyst Price Targets*, the Proxy Statement fails to disclose: (i) the price targets reviewed and how they were selected; (ii) the equity research analysts who prepared and published those price targets; (iii) the dates of the price targets.

35. With respect to BNP's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.5% to 3.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 8.7% to 9.4%, (iv) the net debt of the Company as of June 1, 2021 and minority interests; and (v) the number of fully diluted shares of Company common stock outstanding.

36. With respect to BNP's *Comparable Trading Multiples* analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by BNP in the analysis.

37. With respect to BNP's *Precedent Transaction Multiples* analysis for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by BNP in the analysis, including the value of each transaction, and the closing dates of each transaction.

38. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy

Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by the financial advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

44. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. The Individual Defendants acted as controlling persons of U.S. Concrete within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of U.S. Concrete, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of U.S. Concrete, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of U.S. Concrete, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  C.  Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  D.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 2, 2021           **MELWANI & CHAN LLP**

                 By: /s *Gloria Kui Melwani*
                    Gloria Kui Melwani (GM5661)
                    1180 Avenue of the Americas, 8th Fl.
                    New York, NY 10036
                    Telephone: (212) 382-4620
                    Email: gloria@melwanichan.com

                    *Attorneys for Plaintiff*